IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CC & LC PROPERTIES, LLC,            )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          1:23-cv-1125
                                    )
ALLTEL COMMUNICATIONS OF NORTH      )
CAROLINA LIMITED PARTNERSHIP        )
d/b/a VERIZON WIRELESS,             )
                                    )
            Defendant.              )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Before this court is Plaintiff's Motion for Judgment on the Pleadings, (Doc. 21). Plaintiff has filed a brief in support of its motion, (Doc. 22), Defendant has responded, (Doc. 23), and Plaintiff has replied, (Doc. 24). For the reasons stated herein, Plaintiff's motion will be granted in part and denied in part.

## I.    FACTUAL BACKGROUND

Plaintiff CC & LC Properties, LLC ("CCLC") is a limited liability company organized under North Carolina law and is the sole owner of the real property subject to this dispute. (Am. Compl. (Doc. 13) ¶¶ 1, 6.) On April 22, 2020, Plaintiff entered into a Land Lease Agreement ("the Agreement") with Defendant Alltel Communications of North Carolina Limited Partnership

d/b/a Verizon Wireless ("Alltel"). (Id. ¶ 7.) The Agreement purports to convey a leasehold interest in Plaintiff's property for Defendant to install and maintain "certain cell-tower communications equipment." (Id.)

The Agreement established different terms and corresponding obligations based on two pertinent dates within the business relationship. First, the Agreement created an "Effective Date," providing that the Agreement "shall be effective as of the date of execution by both Parties." (Agreement (Doc. 13) at 10.)[1] Second, the Agreement created a "Commencement Date" starting on the first day of the month after Defendant began installing communications equipment. (Id.) The Agreement further stated that "[r]ental payments shall begin on the Commencement Date." (Id.) Though the Agreement contemplated the conditions that initiated Defendant's rent obligations, it did not require the performance of those conditions by a specific date. Instead, it provided that Defendant "may terminate this Agreement for any reason or no reason in [Defendant's] sole discretion . . . at any time before the Commencement Date." (Id. at 12.)

---

[1] All citations in this Memorandum Opinion and Order to documents filed with this court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 2 -

On December 14, 2020, Defendant sent Plaintiff a letter that "elected to immediately proceed with construction of the planned tower on your Premises." (Def.'s 14 Dec. 2020 Letter (Doc. 13) at 28.) The letter also stated that the "terms of your Lease including the rental rate will remain unchanged." (Id.) After sending this letter, Defendant did not begin installing communications equipment or paying rent in 2020, 2021, or 2022. (Am. Compl. (Doc. 13) ¶¶ 9-10.) Plaintiff's property showed no indications of construction until early November, 2023, when "Plaintiff observed that some construction tape and markings had been placed on the Property by Defendant." (Id. ¶ 11.)

Critically, for purposes of this order, the following facts are admitted by Defendant and therefore undisputed. First, there is no dispute that the parties executed a Land Lease Agreement dated April 22, 2020, (Am. Compl. (Doc. 13) ¶ 7); a copy of the Land Lease Agreement is attached to the Complaint, (Agreement (Doc. 13) at 10-27). Defendant admits those allegations, (Def.'s Answer to Am. Compl. ("Answer") (Doc. 19) ¶ 7), and there is no dispute as to the terms and conditions of the written Land Lease Agreement that is the subject of this dispute.

Second, the parties agree that "[a]t no point during the years 2020, 2021, or 2022, did the Defendant tender rental payments for the Property to the Plaintiff." (Am. Compl. (Doc.

- 3 -

13) ¶ 10.) Furthermore, Defendant "admits the allegations in this paragraph as rental payments required under the Lease were not due at that time." (Answer (Doc. 19) ¶ 10.) Defendant further alleges that it tendered rental payments beginning in 2023 "as required under the Lease." (Id.) This admission is critical because it is consistent with the terms of the lease, which has an "Effective Date," defined as the date of execution of the lease by the parties, and a "Commencement Date," defined as "the first day of the month after Lessee begins installation of Lessee's communications equipment." (Agreement (Doc. 13) at 10.) Relatedly, because there is no dispute as to the terms of the Land Lease Agreement, Plaintiff was obligated to deliver the property to Defendant ready for use, clean and free of debris as of the Effective Date, (id. at 11), however, rental payments would not begin until the Commencement Date, (id. at 10). There is no dispute that the Effective Date was April 22, 2020, and the Commencement Date is a time in 2023.

Third, because the terms of the Land Lease Agreement are not in dispute, it is undisputed that Defendant had the right to terminate the Land Lease Agreement "for any reason or no reason in [Defendant]'s sole discretion with three months prior notice to [Plaintiff] . . . at any time prior to the Commencement Date." (Id. at 12.)

- 4 -

Although Defendant denies allegations regarding what Plaintiff may have observed in November 2023, (see Am. Compl. (Doc. 13) ¶ 11; Answer (Doc. 19) ¶ 11), there is no dispute that Plaintiff sent a letter to Defendant on November 8, 2023, stating that the Agreement was "void and of no further force and effect." (Pl.'s 8 Nov. 2023 Letter (Doc. 13) at 30.) Plaintiff explained that "[i]n the nearly three years since" December, 2020, there had been "absolutely no communication" from Defendant, and because Plaintiff had not "observed any activity whatsoever on the Premises," Plaintiff believed that Defendant "had abandoned its intended use under the Land Lease." (Id.) Plaintiff also maintained that the Agreement was void because Defendant "acted in bad faith" after "intentionally delaying installation of its equipment for three and a half years, and thereby intentionally delaying the Commencement Date and the corresponding commencement of its obligation to pay rent." (Id. at 31.) The Complaint and Answer make it clear that the parties dispute what action, if any, Defendant may have taken between 2020 and 2023 with respect to the Land Lease Agreement, (see Amp. Compl. (Doc. 13) ¶¶ 9, 11–13; Answer (Doc. 19) ¶¶ 9, 11–13), yet there is no dispute that the critical action necessary to compel rent payment — that is, the installation of communications equipment on the property, (see Agreement (Doc.

- 5 -

13) at 10) — did not occur for more than three years following execution of the Land Lease Agreement. As will be further addressed hereinafter, the undisputed facts established by the pleadings permit this court to consider whether, as a matter of law, the parties' agreement was accompanied by valuable consideration sufficient to form a contract.

By way of additional factual background, the parties argue in their respective briefs, Defendant responded to the November 2023 letter two weeks later and "expressly reject[ed] all of the claims and allegations asserted" in the letter. (Def.'s 22 Nov. 2023 Letter (Doc. 13) at 32.) Defendant stated that the Agreement "remains valid and enforceable between the parties" because there was no obligation to pay rent "by a date certain." (Id.) Defendant explained that Plaintiff "cannot reach beyond the four corners of the express Lease to insert obligations or lease terms and conditions that are not expressly included in the Lease." (Id.) Additionally, Defendant identified a "demonstrative, although not an exhaustive, list of [Defendant's] efforts and delays experienced through the permitting process" to demonstrate that the "time period required to commence the Lease term and Rent payments was reasonable." (Id. at 33.) Contending that it had "started preliminary work at the Site," Defendant identified October 30,

- 6 -

2023, as the Commencement Date. (Id. at 32.) Therefore, "the obligation to commence Rent payment is November 1, 2023, which payments are currently being processed." (Id.) Although not established by the pleadings, it is not disputed that October 30, 2023 is the Commencement Date, with rents to commence on November 1, 2023.

## II.  **PROCEDURAL HISTORY**

On December 1, 2023, Plaintiff filed an Application and Order Extending Time to File Complaint and a Notice of Lis Pendens in state court. (Guilford Cnty. Compl. (Doc. 1-1) at 2-3.) On December 19, 2023, Plaintiff filed its state court complaint. (Id. at 6-14.) On December 29, 2023, Defendant removed the action to this court on the basis of diversity. (Notice of Removal (Doc. 1).) Defendant then answered the complaint, (Def.'s Answer to Compl. (Doc. 7)), and Plaintiff moved to amend its complaint with Defendant's consent, (Mot. to Amend Compl. (Doc. 12)). The Magistrate Judge granted Plaintiff's motion in a text order, (Text Order 02/02/2024), and Plaintiff filed its amended complaint, (Am. Compl. (Doc. 13)). Defendant then answered Plaintiff's amended complaint, (Def.'s Answer to Am. Compl. (Doc. 19)).

Following Defendant's answer, Plaintiff filed a Motion for Judgment on the Pleadings, (Pl.'s Mot. for J. on the Pleadings

- 7 -

("Pl.'s Mot.") (Doc. 21)), and supporting brief, (Pl.'s Mem. in Supp. of its Mot. ("Pl.'s Br.") (Doc. 22)). Defendant responded to the motion, (Def.'s Resp. in Opp'n to Pl.'s Mot. ("Def.'s Resp.") (Doc. 23)), and Plaintiff replied, (Pl.'s Reply Br. (Doc. 24)). On April 17, 2024, counsel for Defendant sent a letter to this court, copying Plaintiff's counsel, that clarified "the record with respect to various rental payments" from Defendant to Plaintiff. (Def.'s 17 Apr. 2024 Letter (Doc. 25).) Defendant explained that it had made a series of "required monthly rental payments under the lease." (Id. at 1.) Defendant also stated that Plaintiff had returned the rental payments by sending Defendant checks drawn from Plaintiff's checking account. (Id. at 2.) Defendant also clarified that it had not negotiated the checks which were sent unaddressed to Defendant's headquarters. (Id.)

Plaintiff's motion for judgment on the pleadings is ripe and ready for ruling. A hearing is not necessary to resolve the motion.

III. **STANDARD OF REVIEW**

This court applies the same standard to a Rule 12(c) motion for judgment on the pleadings as to a Rule 12(b)(6) motion to dismiss. Occupy Columbia v. Haley, 738 F.3d 107, 115–16 (4th Cir. 2013). This court assumes the truth of all factual

- 8 -

allegations in the complaint, draws all reasonable inferences in favor of the nonmoving party, and asks whether the complaint plausibly states a claim for relief. Id. In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable" and demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

> Unlike on a Rule 12(b)(6) motion, however, on a Rule 12(c) motion the court may consider the Answer as well. Rinaldi v. CCX, Inc., No. 3:05-CV-108, 2008 WL 2622971, at *2 n. 3 (W.D.N.C. July 2, 2008). The factual allegations of the Answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C.1991). "For the purposes of this motion [the defendant] cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict [the] complaint," because "Plaintiffs were not required to reply to [the] answer, and all allegations in the answer are deemed denied." Id. at 332; see Fed.R.Civ.P. 8(b)(6)("If a responsive pleading is not required, an allegation is considered denied or avoided.").

Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

When evaluating a Rule 12(c) motion, this court may consider only the pleadings, any exhibits thereto that are essential to the allegations, and matters of public record susceptible to judicial notice. See Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that documents attached

- 9 -

to the complaint may be considered "so long as they are integral to the complaint and authentic").

If this court considers additional evidence, the motion must be converted to a motion for summary judgment. <u>Zinzow v. World Ins. Co.</u>, No. 1:00-cv-00544, 2002 WL 737775, at *2 (M.D.N.C. Mar. 19, 2002) (citing Fed. R. Civ. P. 12(c); <u>Eagle Nation, Inc. v. Market Force, Inc.</u>, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001); <u>Pledger v. North Carolina Dept. of Health & Human Servs.</u>, 7 F. Supp. 2d 705, 707–08 (E.D.N.C. 1998)). The Fourth Circuit has recognized that "statements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 449 (4th Cir. 2011) (collecting cases). When a motion is converted to summary judgment, the parties "must be afforded a 'reasonable opportunity for discovery.'" <u>Gay v. Wall</u>, 761 F.2d 175, 177 (4th Cir. 1985) (quoting <u>Johnson v. RAC Corp.</u>, 491 F.2d 510, 515 (4th Cir. 1974)). Conversely, this court need not convert the motion "so long as it does not consider matters 'outside the pleadings.'" <u>Borkowski v. Baltimore Cnty., Maryland</u>, 414 F. Supp. 3d 788, 802 (D. Md. 2019) (quoting Fed. R. Civ. P. 12(d)).

- 10 -

## IV.  <u>ANALYSIS</u>

Plaintiff requests an order pursuant to Federal Rule of Civil Procedure 12(c) declaring "that the document entitled 'Land Lease Agreement' attached to the Amended Complaint as Exhibit A, is void and unenforceable as against the Plaintiff." (Pl.'s Mot. (Doc. 21) at 1.) "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." <u>Smith v. McDonald</u>, 562 F. Supp. 829, 842 (M.D.N.C. 1983, <u>aff'd</u>, 737 F.2d 427 (4th Cir. 1984), <u>aff'd</u> 472 U.S. 479 (1985); <u>see also</u> 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. Nov. 2025 update) ("A motion for judgment on the pleadings under Rule 12© may be granted only if all material issues can be resolved on the pleadings by the district court.").

Following its Amended Complaint, (Am. Compl. (Doc. 13)), and Defendant's Answer (Answer (Doc. 19)), Plaintiff now moves for declaratory relief pursuant to Rule 12(c), (Pl.'s Mot. (Doc. 21)). In its Answer, Defendant "asserts" twenty-two "defenses." (Answer (Doc. 19) at 1–5.) Some of the identified defenses are procedural. (<u>See, e.g.</u>, <u>id.</u> at 1 ("Plaintiff's Amended Complaint (and each cause of action stated in it) fails to state a claim

- 11 -

upon which relief may be granted.").) Some relate to Defendant's actions for the purposes of contract formation. (See, e.g., id. at 2 ("The [Agreement] is valid, enforceable, and in effect (and supported by consideration), in part, because of [Defendant's] performance . . . of one or more of its promises[.]").) Some relate to Plaintiff's actions for the purposes of equitable remedies. (See, e.g., id. at 4 ("Plaintiff's Amended Complaint may be barred either in whole or in part based upon the doctrines of accord and satisfaction, estoppel, payment, and waiver[.]").)

As a preliminary issue, this court must determine whether it can consider Plaintiff's requested relief under Rule 12(c) when Defendant asserts affirmative defenses. "When evaluating a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), courts apply the same standards as they would when deciding whether a party had sufficiently pleaded a claim to survive a motion to dismiss under Rule 12(b)(6)." Blue Rhino Glob. Sourcing, Inc. v. Well Traveled Imps., Inc., 888 F. Supp. 2d 718, 720 (M.D.N.C. 2013) (citing Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2013)). The Fourth Circuit has cautioned that when a defendant asserts affirmative defenses within a motion to dismiss, there are "relatively rare circumstances where facts

- 12 -

sufficient to rule on an affirmative defense are alleged in the complaint," but such a ruling may be possible when the "facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (emphasis omitted) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1999)). The Fourth Circuit stated such concerns because "[t]o require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." Id. at 466; see also CSX Transp., Inc. v. Gilkinson, 406 F. App'x 723, 728 (4th Cir. 2010).

Here, the concerns for a plaintiff having to predict an affirmative defense are belied by the procedural posture of the case. Plaintiff has moved for judgment on the pleadings in response to Defendant's Answer and affirmative defenses. In other words, "the pleadings were closed at the time of the motion." Burbach Broad Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405 (4th Cir. 2002). Because this court will only consider the facts appearing clearly on the face of the Complaint, see Demetry v. Lasko Prods., Inc., 284 F. App'x 14, 15 (4th Cir. 2008), and the allegations in the Answer "to the extent they have not been denied or do not conflict with the

- 13 -

[C]omplaint," <u>Mendenhall v. Hanesbrands, Inc.</u>, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2013) (quoting <u>Farmer v. Wilson Hous. Auth.</u>, 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004)), while taking the non-moving party's allegations as true, <u>see</u> <u>Smith</u>, 562 F. Supp. at 842, this court will consider Defendant's affirmative defenses. <u>See</u> <u>Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Just Born II, Inc.</u>, No. 16-0793, 2017 WL 511911, at *7–8 (D. Md. Feb. 8, 2017), <u>aff'd</u>, 888 F.3d 696 (4th Cir. 2018) (considering affirmative defenses on a motion for judgment on the pleadings); <u>Bradshaw v. Hilco Receivables, LLC</u>, 725 F. Supp. 2d 532, 535–36 (D. Md. 2010) (same); <u>Cody v. Hovey</u>, 219 N.C. 369, 14 S.E.2d 30, 31 (1941) (same); 5C Wright & Miller, Federal Practice and Procedure § 1369 (recognizing a 12(c) motion as part of the "arsenal of weapons for challenging the sufficiency of an opponent's pleading and the viability of the underlying claim or <u>defense</u>" (emphasis added)).

Next, this court must consider the standard under which Defendant's affirmative defenses are evaluated. "<u>Twombly</u> and <u>Iqbal</u> did not specifically address the pleading requirements of affirmative defenses and the issue has not been resolved by any of the Circuit Courts of Appeals." <u>Bradshaw</u>, 725 F. Supp. 2d at 536. This court joins the "the majority of district courts that have addressed this question" and "answer[s] it in the

- 14 -

affirmative." Id. (collecting cases); see also Blue Rhino, 888 F. Supp. 2d at 721 ("Iqbal and Twombly apply as well to motions under Rule 12(c).") (collecting cases); Racick v. Dominion L. Assocs., 270 F.R.D. 228, 233 (E.D.N.C. 2010) (adopting the two-fold reasoning for concluding that Twombly and Iqbal applies to affirmative defenses, including: "that what is good for the goose is good for the gander" where both parties must provide a plausible factual basis for a claim, and that "[b]oilerplate defenses clutter the docket and . . . create unnecessary work" (citations omitted)) (collecting cases); Amy St. Eve & Michael A. Zuckerman, The Forgotten Pleading, 7 Fed. Cts. L. Rev. 153, 169 (2013) (recognizing that plaintiffs may move under Rule 12(c) to "strike affirmative defenses" that are "legally insufficient pleading (e.g., pleading an affirmative defense that is not cognizable under the governing law)."). Therefore, this court will apply the Twombly and Iqbal standard to Defendant's affirmative defenses, which "requires that, 'at a minimum, some statement of the ultimate facts underlying the defense must be set forth, and both its non-conclusory factual content and the reasonable inferences from that content, must plausibly suggest a cognizable defense available to the

- 15 -

defendant.'"[2] <u>Bakery and Confectionery Union</u>, 2017 WL 511911, at *8 (quoting <u>Haley Paint Co. v. E.I. Du Pont De Nemours & Co.</u>, 279 F.R.D. 331, 336 (D. Md. 2012)).

Turning to the merits, Plaintiff argues that the Agreement "is void and unenforceable for failure of consideration, and that as such, the Defendant possesses no rights to the Property, leasehold or otherwise." (Am. Compl. (Doc. 13) ¶ 21.) Defendant conversely asserts that the Agreement "is valid, enforceable, and in effect, in part, because it is supported by consideration." (Answer (Doc. 19) ¶ 5.)

Under North Carolina law, "[t]he well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." <u>Se. Caissons, LLC v. Choate Const. Co.</u>, 247 N.C. App. 104, 110, 784 S.E.2d 650, 654 (2016) (citing <u>Snyder v. Freeman</u>, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980)). Consideration is "any benefit, right, or interest bestowed upon the promisor, or any

---

[2] This court recognizes that the application of <u>Twombly</u> and <u>Iqbal</u> to affirmative defenses is not universally accepted. <u>See</u> <u>Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.</u>, 918 F. Supp. 2d 453, 468 (M.D.N.C. 2013); <u>Orshal v. Bodycote Thermal Processing, Inc.</u>, 15-CV-674, 2016 WL 4007610, at *2 (M.D.N.C. July 26, 2016). However, in cases where the <u>Twombly</u> and <u>Iqbal</u> standard is not applied, courts apply "the language of Rule 8 of the Federal Rules of Civil Procedure." <u>Orshal</u>, 2016 WL 4007610, at *2. As this court will explain in each section, Defendant's affirmative defenses also fail under this standard.

- 16 -

forbearance, detriment, or loss undertaken by the promisee." Brenner v. Little Red Sch. House, Ltd., 302 N.C. 207, 215-16, 274 S.E.2d 206, 212 (1981) (citing Carolina Helicopter Corp. v. Cutler Realty Co., 263 N.C. 139, 139 S.E.2d 362 (1964)). Consideration must exist at both the time of contract formation and when a party "attempts to modify an existing contractual agreement." Labarre v. Duke Univ., 99 N.C. App. 563, 565, 393 S.E.2d 321, 323, disc. review denied, 327 N.C. 635, 399 S.E.2d 122 (1990).

This court finds that Plaintiff is entitled to a finding at this stage that, as a matter of law, the Agreement lacked consideration. First, Defendant's obligation to pay rent was an illusory promise that permitted Defendant to withdraw performance at any time while Plaintiff remained bound by its obligations. Second, Defendant's actions following the Agreement do not constitute consideration because the actions were not part of the bargained-for exchange. Third, Defendant's asserted equitable doctrines do not bind Plaintiff to the Agreement.

A.    Defendant's Rent Obligations

Plaintiff contends that the Agreement "is based only upon illusory consideration, which is insufficient as a matter of law to constitute the valid consideration necessary to form a valid and binding contract enforceable against the Plaintiff." (Pl.'s

- 17 -

Br. (Doc. 22) at 13.) According to Plaintiff, the Agreement lacks consideration because Defendant's obligation to pay rent "is entirely discretionary and may be freely withheld or rescinded." (Id. at 11.) Plaintiff asserts that Defendant's obligation is entirely discretionary because the Agreement does not require rent payments until the Commencement Date. (Id. at 9-10 (citing Agreement (Doc. 13) at 10-11).) Moreover, "Defendant is not actually obligated to trigger the 'Commencement Date.'" (Id. at 10 (citing Agreement (Doc. 13) at 12).) Because Defendant can terminate the Agreement "at any time prior thereto," (id. (citing Agreement (Doc. 13) at 12)), while Plaintiff must grant Defendant "substantial and immediate rights regarding the Property upon the 'Effective Date'," (id. at 10), Plaintiff contends that "Defendant locks down desirable real property for its possible future developments, restricts the landowners' ability to use, develop, or convey its property to any other party indefinitely, all without binding the Defendant to ever commence the lease-term and pay rent to the landowner at any time," (id. at 2-3.)

Defendant argues that consideration is not "limited to a contract's four corners." (Def.'s Resp. (Doc. 23) at 5.) Instead, "North Carolina defines consideration very broadly" and can include "either a benefit to the promisor" or "a detriment

- 18 -

incurred by the promisee." (Id. at 6.) Defendant articulates the detriments it incurred during the construction process and the benefits it provided in rent payments. (Id. at 6-7.) Defendant contends that Plaintiff "misses the point" that Defendant's actions provide consideration. (Id. at 7.) Defendant also explains that "if merely reciting within the Lease's four corners that there is consideration" satisfied consideration requirements in North Carolina, "then there would necessarily be consideration here" because the Agreement's "four corners . . . state that there is consideration." (Id. at 6.)

Neither party challenges this court's authority at this stage to interpret the admitted Agreement and its provisions as a matter of law. "[W]hen the language of a contract is plain and unambiguous, construction of the language is a mater of law for the court." Mountain Fed. Land Bank v. First Union Nat'l Bank of N.C., 98 N.C. App. 195, 200, 390 S.E.2d 679, 682 (1990). Also, under North Carolina law, "[w]hen the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court cannot look beyond the terms of the contract to determine the intentions of the parties." Piedmont Bank & Trust Co. v. Stevenson, 79 N.C. App. 236, 240, 339 S.E.2d 49, 52 (1986) (citation omitted).

Underlying both the "four corners" of the Agreement and the actions "beyond the [Agreement's] four corners," (id. at 5), is whether the parties exchanged promises. "To contract, there must be a promise, 'an assurance that a thing will or will not be done.'" J.T. Enters., LLC v. Countrywide Home Loans, Inc., 204 N.C. App. 370, 696 S.E.2d 201, 2010 WL 2162836, at *3 (2010) (unpublished table opinion) (quoting Bowman v. Hill, 45 N.C. App. 116, 117, 262 S.E.2d 376, 377 (1980)). Thus, this court will first analyze whether Defendant's express promise to pay rent constitutes consideration.[3] Then, because "consideration may be given in ways other than mutual promises outlined specifically within the document," Arrow Enter. Computing Sols., Inc. v. BlueAlly LLC, No. 5:15-cv-37-FL, 2015 WL 6393831, at *3 (E.D.N.C. Oct. 22, 2015), this court will determine whether

_____

[3] Defendant's express promise to pay rent is distinguishable from the Agreement's express statement "that there is consideration." (Def.'s Resp. (Doc. 23) at 6 (citing Agreement (Doc. 13) at 10 ("In consideration of the mutual covenants in this Agreement and intending to be legally bound by this Agreement, the Parties agree as follows . . . .")).) While the promise itself may establish consideration necessary for contract formation, a statement merely "reciting consideration, actually does not bind the [party] to any promise." Milner Airco, Inc. of Charlotte, NC v. Morris, 111 N.C. App. 866, 870, 433 S.E.2d 811, 814 (1993). Therefore, to the extent this court examines the express terms of the Agreement, it considers the promises contained within the terms and not the statements that consideration exists.

- 20 -

Defendant's actions facilitating the construction of communications equipment constitutes consideration.

Plaintiff argues the Agreement is "not supported by consideration, or is supported only by illusory consideration," (Am. Compl. (Doc. 13) ¶ 20 (emphasis omitted)), because the Agreement "purports to impose affirmative restrictions on the Plaintiff with respect to its use of the Property without actually binding the Defendant to do anything, including the payment of rent," (id. ¶ 19).

"A contract is illusory when the promisor 'reserve[s] an unlimited right to determine the nature or extent of his performance.'" Canteen v. Charlotte Metro Credit Union, 386 N.C. 18, 26, 900 S.E.2d 890, 897 (2024) (citation omitted). An illusory promise "is in fact no promise" when it "makes performance optional with the promisor no matter what may happen, or no matter what course of conduct in other respects he may pursue." Bowman, 45 N.C. App. at 117–18, 262 S.E.2d at 377 (citation omitted). In other words, an illusory promise is one that "may be withdrawn on a whim," McLamb v. T.P. Inc., 173 N.C. App. 586, 591, 619 S.E.2d 577, 581 (2005), or can be "given and taken in the same breath." Kadis v. Britt, 224 N.C. 154, 163, 29 S.E.2d 543, 548 (1944).

As of the Effective Date, the Agreement purported to convey to Defendant a right of first refusal in the land, (Agreement (Doc. 13) at 14), an easement allowing ingress and egress over the property for the purpose of installing its communication equipment, (id. at 11), and the assurance that the land was "clean and free of debris." (Id.) Each of these "substantial and immediate" conditions, (Pl.'s Br. (Doc. 22) at 10), were a benefit conferred to Defendant, or a detriment assumed by Plaintiff. However, Defendant provided no reciprocal benefit to Plaintiff, nor did it incur a bargained-for detriment as of the Effective Date. The Agreement contemplated that Defendant would eventually pay rent to Plaintiff, but this obligation to pay rent would only accrue upon the Commencement Date — that is, "the first day of the month after [Defendant] begins installation of [Defendant's] communications equipment." (Agreement (Doc. 13) at 10.) The Agreement offered no date by when Defendant was obligated to begin installation.

Instead, the Agreement provided that "[Defendant] may terminate this Agreement for any reason or no reason in [Defendant's] sole discretion . . . at any time before the Commencement Date." (Id. at 12.) Because Defendant retained the right to cancel the Agreement for any reason or for no reason at all after Plaintiff was obliged to begin its performance, the

- 22 -

Agreement "reserve[d]" for Defendant "an unlimited right to determine the nature or extent of . . . performance.'" <u>See</u> <u>Canteen</u>, 386 N.C. at 26, 900 S.E.2d at 897 (quoting <u>State v. Philip Morris USA, Inc.</u>, 363 N.C. 623, 641–42, 685 S.E.2d 85, 96 (2009)). Defendant could withdraw its obligations "on a whim,"[4]

---

[4] North Carolina courts have "salvaged" other agreements by recognizing an implied limitation on modifying terms through the duty of good faith and fair dealing. <u>See</u> <u>Sears Roebuck & Co. v. Avery</u>, 163 N.C. App. 207, 220, 593 S.E.2d 424, 433 (2004). An otherwise illusory contract "may be remedied because a limitation on a promisor's freedom of choice 'may be supplied by law.'" <u>Id.</u> (quoting Restatement (Second) of Contracts § 77 cmt.d (A.L.I. 1981)); <u>see</u> <u>also</u> <u>Canteen</u>, 386 N.C. at 26–27, 900 S.E.2d at 897. Courts have read the duty of good faith and fair dealing into agreements that grant a party the right to modify the terms of an adhesion contract during the contractual relationship. <u>See</u> <u>Canteen</u>, 386 N.C. at 26, 900 S.E.2d at 897 (identifying a "unilateral Arbitration Amendment pursuant to the Notice of Amendments provision"); <u>Sears</u>, 163 N.C. App. 207, 220, 593 S.E.2d 424, 433 (describing a "Change of Terms" provision in an "adhesion contract" that permits the enforcement of standardized contracts "insofar as the new or modified terms relate to subjects already addressed in some fashion in the original agreements"). This court does not find, nor does Defendant argue, that the Agreement should be limited by consideration supplied by law. Instead of setting a Commencement Date subject to change, the Agreement reserved the right to terminate for any reason, thereby excusing the obligation to perform. This ability to terminate avoids the limiting principle that changes cannot be made "in such a manner as to frustrate the purpose of the contract." <u>Serpa v. California Sur. Investigations, Inc.</u>, 215 Cal. App. 4th 695, 706, 155 Cal. Rptr. 3d 506, 514 (2013), <u>as modified</u> (Apr. 19, 2013), <u>as modified</u> (Apr. 26, 2013). Additionally, this court is not persuaded that the duty can be implied under North Carolina law when it is "in conflict with the express terms" of an agreement, <u>Maglione v. Aegis Fam. Health Centers</u>, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005), or that the facts support a finding of good faith if the duty were to be implied.

- 23 -

see McLamb, 173 N.C. App. at 591, 619 S.E.2d at 581, prior to conferring the bargained-for benefit of rent payments and without suffering any detriment or conveying any benefit as a result of doing so. Based on the terms of the Agreement, Defendant cannot establish sufficient consideration because its promise of rent payments was illusory. By the terms of the contract, Defendant received the benefit of a limitation on Plaintiff's use of the property and of a limitation on Plaintiff's right to transfer the property by contract, all without providing any consideration by rental payment or otherwise until an unspecified future date which would only occur should Defendant decide to install communications equipment on the property. Until that future occurrence, Defendant was under no obligation to perform and could terminate the contract for no reason or any reason. Unless and until Defendant installed communications equipment, Defendant "retained an unlimited right to determine the nature or extent . . . of performance.'" Canteen, 386 N.C. at 26, 900 S.E.2d at 897.

## B.  Defendant's Actions

Defendant's arguments in support of a finding that consideration was exchanged arise from affirmative defenses set forth in the Answer. (See Answer (Doc. 19) at 2-4.) A party is

- 24 -

requires to "state in short and plain terms its defense to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Plaintiff has not objected to the facts submitted by Defendant, but instead has argued that these facts, even if true, are irrelevant and insufficient to create consideration or cure the defect that existed at inception. (See Pl.'s Br. (Doc. 22) at 15; Pl.'s Reply Br. (Doc. 24) at 2.) This court, in analyzing Defendant's arguments in support of consideration, has considered the facts submitted by Defendant, has assumed the truth of the facts supporting the defenses asserted in the Answer for the purpose of determining whether an affirmative defense would apply to defeat Plaintiff's claim of illusory consideration. See Smith, 562 F. Supp. at 842. This court finds that Defendant's affirmative defenses are not sufficient to establish contract formation.

While Defendant's illusory promise to pay rent did not provide consideration, consideration may exist "in ways other than mutual promises outlined specifically within the document." BlueAlly, 2015 WL 6393831, at *3. Defendant has asserted, as an affirmative defense, that beyond the express terms, "either a benefit to the promisor . . . or a detriment incurred by the promisee . . . will suffice" for consideration. (See Def.'s Resp. (Doc. 23) at 6 (emphasis in original); Answer (Doc. 19)

- 25 -

¶ 7.) Defendant argues that it both incurred significant detriments facilitating the construction of communications equipment and provided benefits to Plaintiff. (Id. at 6–7.) Such actions include:

> (1) hiring professionals to perform a zoning review, (2) completing a zoning review, (3) obtaining necessary zoning approvals, (4) performing needed radio frequency analyses, (5) redesigning the site to accommodate a taller tower, (6) notifying Plaintiff of design changes to the leased premises and obtaining approval from Plaintiff, (7) notifying and/or obtaining necessary approvals from the federal government, including the Federal Aviation Administration, Department of Transportation, and Federal Communications Commission, (8) conducting a National Environmental Policy Act (NEPA) review, (9) complying with Guildford County ordinances and obtaining approvals from Guildford County, including issuance of building permit, (10) hiring personnel to erect, install, and construct the communications equipment on the leased premises, (11) ordering, purchasing, and securing needed equipment, (12) submitting an erosion control plan, (13) constructing, erecting, and installing communications equipment on the leased premises, and (14) tendering rental payments to Plaintiff as required under the Lease.

(Answer (Doc. 19) ¶ 9.) Because of the "considerable amounts of employee resources and money" spent constructing communications equipment, Defendant argues that its three years of preparation provide consideration. (Def.'s Resp. (Doc. 23) at 6–7.)

Plaintiff argues that consideration was not provided because Defendant's actions, "even if true[,] . . . were done solely for the benefit of Defendant and did not induce Plaintiff to execute the [Agreement.]" (Pl.'s Reply Br. (Doc. 24) at 3.)

- 26 -

Plaintiff explains that the "only consideration that can be reasonably inferred from the [Agreement] as inducing the promises purportedly made by Plaintiff therein (i.e., the 'benefit of Plaintiff's bargain') was that of rental payments, which ultimately remained entirely optional at Defendant's sole discretion." (Id. at 4 (emphasis omitted).) Because Defendant's actions "were matters Defendant undertook for its own benefit while it decided whether it ever wanted to actually pay for the Property," (id. at 4 (emphasis in original)), Plaintiff contends that it "was not induced to execute the [Agreement] in exchange for conduct that the Defendant might take in preparing for constructing its cell tower," (id. at 3-4 (emphasis omitted).)

Along with a party providing benefits or incurring detriments, North Carolina courts have recognized that "[t]o constitute consideration, a performance or a return promise must be bargained for." Chem. Realty Corp. v. Home Fed. Sav. & Loan Ass'n of Hollywood, 84 N.C. App. 27, 30, 351 S.E.2d 786, 789 (1987) (quoting Restatement (Second) of Contracts § 71 (A.L.I. 1979)). "'Bargained for' means the consideration and the promise bear a reciprocal relation of motive or inducement and the consideration induces the making of the promise and the promise induces the furnishing of the consideration." Davis v. Woods, 286 N.C. App. 547, 562, 882 S.E.2d 558, 570-71 (2022) (quoting

- 27 -

<u>Chem. Realty</u>, 84 N.C. at 31, 351 S.E.2d at 789). In other words, "[c]onsideration is the 'glue' that binds parties together, and a mere promise, without more, is unenforceable." <u>Lee v. Paragon Grp. Contractors, Inc.</u>, 78 N.C. App. 334, 338, 337 S.E.2d 132, 134 (1985) (quoting <u>In re Foreclosure of Owen</u>, 62 N.C. App. 506, 509, 303 S.E.2d 351, 353 (1983)).

To bind the parties, the promises "must purport to be the motive each for the other," <u>Chem. Realty</u>, 84 N.C. App. at 31, 351 S.E.2d at 789 (quoting 17 Am. Jur. 2d Contracts § 92 (1964)), and there can "be no bargained for exchange" when there is "no reciprocity of inducements." <u>Davis</u>, 286 N.C. App. at 563, 882 S.E.2d at 570 (citing <u>Chem. Realty</u>, 84. N.C. App. at 32, 351 S.E.2d at 789)); <u>cf.</u> Restatement (Third) of Restitution and Unjust Enrichment § 2 (A.L.I. 2011) ("Liability in restitution may not subject an innocent recipient to a forced exchange: in other words, an obligation to pay for a benefit that the recipient should have been free to refuse.").

Here, Defendant's actions facilitating construction were not part of the bargained for exchange and therefore did not provide consideration. While Defendant's actions during the construction process may have required company resources, none of Defendant's actions were made to induce Plaintiff's performance. Plaintiff was induced to lease its land by

- 28 -

Defendant's promise of rent payments, not Defendant's assurance

of eventual construction. Defendant may have relied on

Plaintiff's promise of forbearance to begin the construction

process, but asymmetrical reliance where "the other half is

wanting" is insufficient to establish consideration. Chem.

Realty, 84 N.C. at 31, 351 S.E.2d at 789.

> As the North Carolina Court of Appeals explained:

> consideration analysis focuses on the dynamic of the parties' transaction. Where it is claimed that a contract exists between A and B, the question is whether A's promise induced B to make a counter-promise or to begin performance of some act or to forbear from taking some action. The flip side to this question is whether A was induced to make his promise in exchange for B's promise or performance. Without this reciprocity of inducements — characterized as a 'bargained-for exchange' — no consideration exists to support the contract.

Davis, 286 N.C. App. at 562, 882 S.E.2d at 571 (quoting Cline v.

Dahle, 149 N.C. App. 975, 563 S.E.2d 307, 2002 WL 857552, at *4

(2002) (unpublished table opinion)). It is not enough to say

that both Plaintiff and Defendant were induced by assurances

from the other party at some point during the contractual

relationship. Such assurances must be reciprocal. Because

Defendant's actions facilitating construction did not induce

Plaintiff to forebear, this court finds that Defendant's actions

cannot provide consideration.

- 29 -

This court finds persuasive the Seventh Circuit's consideration analysis in <u>Patel v. American Board of Psychiatry and Neurology, Inc.</u>, 975 F.2d 1312 (7th Cir. 1992). There, a physician was first told that a foreign post-graduate internship met the requirements for board certification, then was told the opposite upon completion of the internship. <u>Id.</u> The Seventh Circuit found that there was no consideration and therefore no enforceable contract between the physician and the board. <u>Id.</u> at 1314.

"An enforceable contract, in Anglo-American common law, is an exchange." <u>Id.</u> (citing Restatement (Second) of Contracts § 17 (A.L.I. 1979); 1 E. Allan Farnsworth, <u>Farnsworth on Contracts</u> §§ 2.2–2.4 (1990)). The court explained that "[t]here was no exchange here," because the plaintiff was "misled by the (legal) dictionary definition of consideration as benefit to the promisor . . . or detriment to the promisee." <u>Id.</u> (first citing 3 Samuel Williston, <u>A Treatise on the Law of Contracts</u> § 7:5 (4th ed., Richard A. Lord ed. 1992); and then citing 1 Arthur C. Corbin, <u>Contracts</u> §§ 121–124 (1963) (criticizing of Williston's legal dictionary definition))). While the plaintiff "incurred a detriment in the sense of a cost by (as he argues) submitting documentation in support of his application," the court found that this "detriment was not part of a bargain." <u>Id.</u> Such

- 30 -

"[u]nbargained detriments are relevant not to contract but to estoppel."

Defendant's actions following the Agreement similarly constitute unbargained detriments. Plaintiff leased its land to Defendant because of the promise of rent payments, which was illusory because the Agreement permitted Defendant to forego rent payments and restrain Plaintiff's right to use or alienate the land until an unidentified Commencement Date which was without a limit as to duration. Any actions Defendant took to capitalize on the land were for its own benefit, not Plaintiff's. Defendant's definition of consideration as a detriment or benefit, untethered to the concept of exchange, disregards foundational principles of contract law recognized by North Carolina courts. See Chem. Realty, 84 N.C. App. at 32–33, 351 S.E.2d at 789–90; Davis, 286 N.C. App. at 562–63, 882 S.E.2d at 570–71. Therefore, the Agreement lacks consideration.

This lack of exchange distinguishes this case from Carolina Helicopter. There, the plaintiff operated a helicopter transport business, and the defendant owned and managed an office building "suitable for a helicopter port." Carolina Helicopter Corp. v. Cutter Realty Co., 263 N.C. 139, 142, 139 S.E.2d 362, 365 (1964). The defendant "offered to the plaintiff that if the plaintiff would secure necessary [governmental approval] for the

- 31 -

establishment and operation of the helicopter taxi service between the roof of defendant's building and the [Charlotte] Airport," then the defendant would provide the plaintiff "one year's use, rent free . . . of said roof to begin upon plaintiff performing the aforesaid acts, and exclusive possession of the roof of said building for the said helicopter service." Id.

The plaintiff, relying on the defendant's offer, spent "great time, effort and . . . expense[]" to obtain governmental approval. Id. at 142–43, 139 S.E.2d at 365. With respect to consideration, the North Carolina Supreme Court explained:

> There is sufficient allegation of consideration. 'It may be stated as a general rule that 'consideration' in the sense the term is used in legal parlance, as affecting the enforceability of simple contracts, consists of some benefit or advantage to the promisor, or some loss or detriment to the promisee. It has been held that 'there is a consideration if the promisee, in return for the promise, does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.'
>
> Plaintiff incurred large expenses and caused its officers and agents to expend much time and effort in securing government approval for the use of the roof as a 'heliport,' and additionally rented a helicopter, all on account of defendant's promise. An agreement by which one party is subjected to trouble, loss or inconvenience, is not a nudum pactum.

Id. at 147 (emphasis added) (citations omitted) (collecting cases). Under such circumstances, the time, effort, and expense necessary to obtain governmental approval to operate a

- 32 -

helicopter port on top of defendant's roof was a "bargained for" part of the agreement. See Davis, 286 N.C. App. at 562, 882 S.E.2d at 570. The building owner retained the right to "den[y] plaintiff entry to and use the roof," and after construction would receive the enduring benefit of having its roof permitted as a helicopter port which, after the first year of rent-free use provided to the plaintiff, could become a profit center for the building owner. Carolina Helicopter, 263 N.C. at 147, 139 S.E.2d at 368. Likewise, the plaintiff's actions facilitating construction of the helicopter port contemplated the benefit of free and exclusive use of the port for a year. Id. at 143, 139 S.E.2d at 365. Carolina Helicopter is therefore distinct because both parties' assurances induced the other party's actions. Because of the bargained-for reciprocity of these assurances, the parties' agreement was supported by consideration.

The facts of this case do not support that Plaintiff promised to rent the land to Defendant if Defendant spent time, effort, and expense to obtain governmental approval for the communication tower. The Agreement here includes a "Government Approvals" clause which states that:

> [Defendant's] Use is contingent upon [Defendant] obtaining all of the certificates, permits, and other approvals (collectively, the "Government Approvals"), that may be required by any federal, state, or local authorities (collectively, "Government Entities"), and a satisfactory soil boring test, environmental studies,

- 33 -

> or any other due diligence [Defendant] chooses that will
> permit [Defendant's] Use. [Plaintiff] shall cooperate
> with [Defendant] in its effort to obtain the Government
> Approvals, and [Plaintiff] shall take no action that
> would adversely affect the status of the Property with
> respect to [Defendant's] Use.

(Agreement (Doc. 13) at 12.) But there is no indication that
Defendant's obtaining of "Government Approvals" for its
communications tower was intended to confer a benefit onto
Plaintiff or was reciprocal consideration for Plaintiff's
promise to rent the land. Plaintiff did not agree to rent the
land to Defendant "on account of [D]efendant's promise" to
secure the appropriate governmental approvals, nor would the
government approvals provide a benefit to Plaintiff. See
Carolina Helicopter, 263 N.C. at 147, 139 S.E.2d at 368.
Accordingly, Carolina Helicopter is distinguishable from and
does not support a finding of consideration in this case, and
the detriments that Defendant incurred do not amount to a
bargained for exchange.[5]

---

[5] Likewise, Bumgarner v. Tomblin, 63 N.C. App. 636, 642, 306
S.E.2d 178, 183 (1983), does not support Defendant's detrimental
reliance argument. (See Def.'s Resp. (Doc. 23) at 8.) Bumgarner
stands for the proposition that "valuable consideration need not
be money" and that one's devotion of "time and knowledge" can
amount to consideration. Bumgarner, 63 N.C. App. at 642, 306
S.E.2d at 183. But like Carolina Helicopter, Bumgarner does not
support that Defendant's time and effort expended to prepare for
the installation of its communication tower can constitute
consideration absent a reciprocal, bargained for exchange.

- 34 -

Finally, to the extent that Plaintiff accepted rent payments,[6] this court finds that Defendant's asserted benefits do not supply consideration. Along with incurring detriments, Defendant argues that it also provided benefits to Plaintiff by paying rent. (Def's Resp. (Doc. 23) at 7.) Unlike its actions

---

[6] At this stage, this court draws all inferences in favor of the non-moving party. Occupy Columbia v. Haley, 738 F.3d 107, 115-16 (4th Cir. 2013). Additionally, this court will only consider the pleadings, any exhibits essential to the allegations, and matters of public record. Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014). Should this court consider any additional evidence, the motion must be converted to one for summary judgment. Zinzow v. World Ins. Co., No. 1:00-cv-00544, 2002 WL 737775, at *2 (M.D.N.C. Mar. 19, 2002).

Here, the parties dispute whether Defendant paid and Plaintiff accepted rent payments. The last filing before this court was a letter from Defendant clarifying the rent payments at issue. (See Def.'s 17 Apr. 2024 Letter (Doc. 25).) Defendant explains that while it represented to this court that Plaintiff accepted rental payments, (see, e.g., Answer (Doc. 19) at 7), "Plaintiff has, in fact, returned the rental payments to [Defendant]." (Id. at 1.) Defendant also asserts that the return checks "have not been negotiated, i.e., accepted, by [Defendant]." (Id. at 2.) Copies of the payments have not been provided to this court, and Defendant does not assert that Plaintiff negotiated the checks prior to returning them to Defendant. This court need not determine the whereabouts or legal status of Defendant's payments, however, because the undisputed facts based solely on the pleadings are sufficient to establish that the Agreement was not supported by consideration.

Based on the correspondence provided at the pleading stage, this court finds that Defendant had not made any payments to Plaintiff by the time Plaintiff sent Defendant a letter staying that the Agreement "is null and void and of no further force and effect," (Pl.'s 8 Nov. 2023 Letter (Doc. 13) at 30), or by the time Defendant responded to Plaintiff's letter, (see Def.'s 22 Nov. 2023 Letter (Doc. 13) at 32) ("payments are currently being processed"). These statements allow this court to rule on the issue of consideration without converting the motion to summary judgment, as explained in this section.

- 35 -

facilitating construction, Defendant's rent payments were part of the bargained for exchange. However, Defendant's promise to make such payments was illusory. Because Defendant's payments were made pursuant to an illusory promise and after Plaintiff had already communicated to Defendant that the Agreement was "null and void and of no further force and effect," (Pl.'s 8 Nov. 2023 Letter (Doc. 13) at 30), this court finds that Defendant's payments do not constitute consideration for three reasons.

First, Defendant's illusory promise rendered the contract, at minimum, unenforceable. As the Fourth Circuit recently explained, "[i]t is rudimentary contract law that an agreement lacks consideration, and is therefore never formed, when it consists entirely of illusory promises." Johnson v. Cont'l Fin. Co., LLC, 131 F.4th 169, 178 (4th Cir. 2025) (citing Restatement (Second) of Contracts § 77 (A.L.I. 2024)); see also In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig., 835 F.3d 1195, 1209 (10th Cir. 2016) (explaining that an illusory promise provides no consideration and that the party making the illusory promise "cannot enforce the contract"). As an

unenforceable contract,[7] Defendant's subsequent actions cannot thereafter supply consideration. See Matter of GEM de Puerto Rico, Inc., 79 B.R. 142, 144 (D.P.R. 1987). Consideration is required "at the time of the formation of the contract, and may not be 'supplied' later. There is no contract in existence at the time of its attempted formation, and neither is the contract formed at a later date, by an attempt to support the previous invalid contract with consideration." Id. (citing United States v. Marin, 651 F.2d 24 (1st Cir. 1981)).

Defendant's asserted benefits provided pursuant to its illusory promise are relevant not to contract but to estoppel. See Tuckett v. Guerrier, 149 N.C. App. 405, 412 n.5, 561 S.E.2d 310, 314 n.5 (2002) ("While estoppel cannot arise if a transfer

---

[7] Courts have also found that an illusory promise renders the contract void, not merely unenforceable. See 3 Samuel Williston, A Treatise on the Law of Contracts § 7:7 (4th ed., Richard A. Lord ed. 2025) (collecting cases). The North Carolina Supreme Court has recognized that a void contract, "means, of course, that it is the same as if the contract had never been made at all. That which is void, or a nullity, can have had no legal existence or binding obligation." Stephens v. Hicks, 156 N.C. 239, 72 S.E. 313, 316 (1911). Moreover, "[u]nder North Carolina law, a void contract is not considered valid and cannot thereafter be made valid by ratification." Wood v. Berne, No. 7:08-CV-165-D, 2010 WL 11565506, at *3 (E.D.N.C. Mar. 23, 2010) (citing McNeill v. Durham & Charlotte R.R., 135 N.C. 682, 47 S.E. 765, 766 (1904); Transp. Servs. of N. Carolina, Inc. v. Wake Cnty. Bd. of Educ., 198 N.C. App. 590, 598, 680 S.E.2d 223, 228 (2009)). Thus, to the extent that the illusory promise made the Agreement void, this court finds that the parties' subsequent actions similarly cannot make the contract valid by providing consideration.

is void, it may, however, operate to enforce an otherwise unenforceable agreement." (emphasis in original)); Transp. Servs., 198 N.C. App. at 599, 680 S.E.2d at 228 (analyzing a plaintiff's argument that the defendant "previously treated the contract as valid and accepted benefits flowing from the that contract" as an estoppel claim); Butler v. Enter. Integration Corp., 459 F. Supp. 3d 78, 101 (D.D.C. 2020) ("Like promissory estoppel, unjust enrichment provides a party with a remedy to unwind entanglements that may have arisen from a failed agreement, for instance, . . . where the agreement is too indefinite to be enforced." (quoting Vila v. Inter-Am. Inv. Corp., 570 F.3d 274, 280 (D.C. Cir. 2009))); Orozco v. Chase Home Fin. LLC, No. 10-51090-D-13, 2011 WL 7646369, at *3 (Bankr. E.D. Cal. Aug. 16, 2011) ("Thus, the doctrine of part performance may come into play either to estop the defendant from asserting the statute of frauds, or at a minimum, to allow the plaintiffs to recover the payments made under an invalid contract."). Because Defendant could "avoid all of its obligations" with its promise of rent payments, Johnson, 131 F.4th at 178, this court finds that any benefits conferred pursuant to the unenforceable contract must be resolved in equity, not as a matter of contract formation.

Second, even accepting that the illusory promise rendered the contract unenforceable rather than void, this court finds that the Agreement was not modified by later conduct of the parties. Courts have determined that a contract lacking consideration can be "remedied" by the subsequent conduct of the parties. See Hudson Neurosurgery, PLLC v. Archdiocese of New York, No. 24-CV-3489, 2025 WL 2708398, at *5 (S.D.N.Y. Sep. 23, 2025) (quoting WCA Holdings III, LLC v. Panasonic Avionics Corp., 704 F. Supp. 3d 473, 495 (S.D.N.Y. 2023)).

However, to modify the terms of an unenforceable contract, North Carolina courts have required evidence of both new consideration and "consent to a modification of the terms" by the parties. Canteen, 386 N.C. at 22, 900 S.E.2d at 894 (quoting Wheeler v. Wheeler, 299 N.C. 633, 637, 263 S.E.2d 763 (1980)). Because the Agreement involved leased property and not the sale of goods,[8] the parties' course of dealing must establish additional consideration and mutual assent to the modified

---

[8] In Cordry v. Vanderbilt Mortgage & Finance, the Eighth Circuit explained that the parties' conduct cannot modify an agreement "unless the evidence shows mutual assent and additional consideration for the modification." 445 F.3d 1106, 1111 (8th Cir. 2006). However, the court identified that "[t]his rule would not apply to a sale of goods under the Uniform Commercial Code." Id. at 1111 n.4. Because the Agreement in this case, like the contract in Cordry, did not involve a sale of goods, this court finds that the Uniform Commercial Code provisions on the course of conduct are inapplicable.

terms. See Brumley v. Mallard, L.L.C., 154 N.C. App. 563, 568, 575 S.E.2d 35, 38 (2002), aff'd, 357 N.C. 247, 580 S.E.2d 691 (2003). Here, although the facts alleged at the pleading stage in support of an affirmative defense might be sufficient to establish the tender of rents (see Answer (Doc. 19) ¶ 14), the admitted facts demonstrate that the Plaintiff did not assent to modified terms, nor was additional consideration accepted. Prior to Defendant making any rent payments, Plaintiff sent Defendant a letter stating that it considered the Agreement "null and void and of no further force and effect." (Pl.'s 8 Nov. 2023 Letter (Doc. 13) at 30.) Defendant later responded to Plaintiff's letter, indicating that payments were "currently being processed." (See Def.'s 22 Nov. 2023 Letter (Doc. 13) at 32.) Therefore, Plaintiff's rejection of the Agreement as void, prior to Defendant's confirmation that payments had not been made, reveals the absence of additional consideration and mutual assent required to remedy an unenforceable contract through the parties' course of conduct.

Third, to the extent that the parties' performance can provide consideration without modifying or remedying the contract through the course of conduct, this court again finds the parties' actions insufficient. The Eighth Circuit identified that a promise was not illusory when the agreement "had been in

effect for years" and both parties "had provided substantial performance of their respective contractual promises." <u>Stokes v. DISH Network, L.L.C.</u>, 838 F.3d 948, 952 (8th Cir. 2016). Unlike <u>Stokes</u>, where each party performed pursuant to its obligations for years before "service interruptions occurred," <u>id.</u>, a core component of Plaintiff's claim is Defendant's inaction. Defendant gained the benefit of Plaintiff's lease for over three years and provided no benefits to Plaintiff until after Plaintiff's letter to Defendant. Both the terms of the Agreement and Defendant's subsequent actions indicate that Defendant had "seemingly unlimited discretion in performing," <u>see</u> <u>id.</u>, and therefore no consideration can be identified from the parties' performance following their contractual promises. Therefore, this court finds that Defendant's rent payments do not provide consideration and that the Agreement is unenforceable.

## C. **<u>Equitable Relief</u>**

As explained above, Defendant's equitable theory arguments arise from affirmative defenses set forth in the Answer. (<u>See</u> Answer (Doc. 19) at 2-4.) A party is required to "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Plaintiff has not objected to the facts submitted by Defendant, but instead has argued that these facts, even if true, are irrelevant and insufficient to create

- 41 -

consideration or cure the defect that existed at inception. (See Pl.'s Br. (Doc. 22) at 15; Pl.'s Reply Br. (Doc. 24) at 2.) This court, in analyzing Defendant's arguments, has considered the facts submitted by Defendant and assumed the truth of those facts for the purpose of determining whether an affirmative defense based in equity would apply to defeat Plaintiff's claim of illusory consideration. See Smith, 562 F. Supp. at 842. This court finds that Defendant's affirmative equitable defenses are not sufficient to establish the formation of a contract.

While the Agreement lacks consideration, certain equitable doctrines may "enforce an otherwise unenforceable agreement." B & F Slosman v. Sonopress, Inc., 148 N.C. App. 81, 85, 557 S.E.2d 176, 179 (2001) (citing Computer Decisions, Inc. v. Rouse Office Mgmt. of N.C., 124 N.C. App. 383, 387, 477 S.E.2d 262, 264 (1996), disc. rev. denied, 345 N.C. 340, 483 S.E.2d 163 (1997)). In its response to Plaintiff's motion, Defendant argues that Plaintiff "is estopped from denying there is consideration for the Lease because its promises contained in the Lease induced [Defendant] to act and incur detriments in reliance on the Lease." (Def.'s Resp. (Doc. 23) at 4.) Defendant articulates multiple theories of estoppel, including promissory estoppel, (see id. at 9), quasi-estoppel, (see id. at 13), and

- 42 -

ratification, (see id. at 14).[9] This court finds that none of Defendant's asserted equitable doctrines bind Plaintiff to the Agreement.

---

[9] In its Answer, Defendant also argues that Plaintiff's claims "may be barred either in whole or in part based upon the doctrines of accord and satisfaction, estoppel, payment, and waiver." (Answer (Doc. 19) at 4.) Defendant also asserts that "Plaintiff's claims are barred by the doctrine of laches, in part, because Plaintiff unreasonably delayed in asserting its claims to the detriment of [Defendant]." (Id.) Characterizing Plaintiff's complaint as "an impermissible shot-gun pleading," (id. at 5), Defendant advances several of these equitable doctrines without further explanation or analysis in either its Answer or response to Plaintiff's motion for judgment on the pleadings. The Fourth Circuit has recognized that failing to develop an argument in briefing can result in waiver of the issue. See Belk, Inc. v. Meyer Corp., 679 F.3d 146, 152 n.4 (4th Cir. 2012). This court finds that even if Defendant's identified doctrines were not waived, none are applicable to this case.
    The doctrine of accord and satisfaction requires that a party accept "something other than or different from what he is, or considered himself entitled to." The N. Carolina State Bar v. Gilbert, 189 N.C. App. 320, 327, 663 S.E.2d 1, 6 (2008) (quoting Sharpe v. Nationwide Mut. Fire Ins. Co., 62 N.C. App. 564, 565, 302 S.E.2d 893, 894 (1983)). Additionally, North Carolina courts have recognized that the doctrine cannot apply without "evidence or allegation of negotiation or agreement between plaintiff and defendant concerning payment or acceptance of less than the full amount of the account." In re Five Oaks Recreational Ass'n, Inc., 219 N.C. App. 320, 326, 724 S.E.2d 98, 102 (2012) (quoting Fruit & Produce Packaging Co. v. Stepp, 15 N.C. App. 64, 68, 189 S.E.2d 536, 538 (1972)). Here, to the extent Defendant made rent payments, such payments were neither different than what was contemplated as part of the bargained for exchange nor negotiated with additional or separate terms accepted by Plaintiff.

- 43 -

### i. __Promissory Estoppel__

The first estoppel doctrine raised by Defendant is promissory estoppel. Defendant argues that "under the circumstances of this case, [Plaintiff] is estopped from denying

The doctrine of waiver "belongs to the family of estoppel," though there are "distinguishable terms." Danville Lumber & Mfg. Co. v. Gallivan Bldg. Co., 177 N.C. 103, 97 S.E. 718, 719 (1919). "Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be designed, or one party must have so acted as to induce the other to believe that he intended to waive, when he will be forbidden to assert the contrary." Id. at 103, 97 S.E. at 720. Moreover, North Carolina courts have required that "[t]he waiving party is the innocent, or nonbreaching party." Wachovia Bank & Tr. Co., N. A. v. Rubish, 306 N.C. 417, 425, 293 S.E.2d 749, 755 (1982) (quoting Wheeler v. Wheeler, 299 N.C. 633, 639, 263 S.E.2d 763, 766–67 (1980)). Defendant fails to articulate how this doctrine applies to Defendant, and this court cannot identify how Plaintiff's actions can be construed to suggest that Plaintiff first induced Defendant to believe that it waived any contractual rights, then acted to the contrary.

The doctrine of laches requires that "the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches." John WM. Brown Co. v. State Employees' Credit Union, 231 N.C. App. 264, 267, 752 S.E.2d 185, 188 (2013) (quoting MMR Holdings, LLC v. City of Charlotte, 148 N.C. App. 208, 209–10, 558 S.E.2d 197, 198 (2001)). Just as Defendant "reject[ed] any claim that the length of time from the Effective date of the Lease to present day represents an unreasonable period of time to commence construction," (Def.'s 22 Nov. 2023 Letter (Doc. 13) at 33), this court finds that Plaintiff did not delay its rejection of the Agreement because it was relying on Defendant's performance to initiate the Commencement Date, nor was any delay in enforcement unreasonable and to Defendant's prejudice given the significant time Defendant spent preparing for construction. Therefore, this court will only consider the estoppel arguments raised in Defendant's response to Plaintiff's motion for judgment on the pleadings.

- 44 -

that [Defendant] has provided consideration." (Def.'s Resp. (Doc. 23) at 9.) Defendant explains that "[t]o hold otherwise would cause [Defendant] to forfeit all benefit of its three years' worth of efforts and expenditures incurred in preparing to build and building a cell tower." (Id.) Additionally, Defendant articulates that it "does not seek to use promissory estoppel offensively. Instead, it raises promissory estoppel as a defense to Plaintiff's . . . lawsuit, which seeks to renege on its promise by invalidating the Lease." (Id. at 10 (emphasis in original).)

Plaintiff contends that promissory estoppel is inapplicable because it did not accept any benefits from Defendant and "any alleged conduct proffered as ratifying . . . or inducing reliance thereof by the Defendant, necessarily fail[s] to support a lease of real property exceeding three years of duration pursuant to North Carolina's statute of frauds." (Pl.'s Reply (Doc. 24) at 5–6) (citing N.C. Gen. Stat. § 22-2 (2023).) Moreover, Plaintiff asserts that "Defendant incorrectly assumes that because it is the defendant in this action, that its use of promissory estoppel is inherently defensive." (Id. at 6 (emphasis in original).) Instead, according to Plaintiff, Defendant's use of promissory estoppel "is offensive, as Defendant is seeking to deploy the doctrine of promissory

- 45 -

estoppel to affirmatively enforce obligations on Plaintiff that lacked consideration from the inception." (Id. at 7 (emphasis omitted).)

Through promissory estoppel, "a party that has reasonably relied on the promise of another may enforce the promise, absent valuable consideration, in order to avoid injustice." Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 591. North Carolina courts have not "expressly recognized [promissory estoppel] in all situations." Home Elec. Co. of Lenoir v. Hall & Underdown Heating & Air Conditioning Co., 86 N.C. App. 540, 543, 358 S.E.2d 539, 541 (1987), aff'd, 322 N.C. 107, 366 S.E.2d 441 (1988). While not "officially recognized as an affirmative cause of action under North Carolina law," Fifth Ave. United Methodist Church of Wilmington v. N. Carolina Conf., Se. Jurisdiction, of United Methodist Church, Inc., 297 N.C. App. 246, 267, 911 S.E.2d 106, 123 (2024) (citing Home Elec., 86 N.C. App. at 545, 358 S.E.2d at 542), courts have "applied the doctrine . . . in a defensive situation, where there has been an intended abandonment of an existing right by the promisee." Id. at 268, 911 S.E.2d at 106 (quoting Home Elec., 86 N.C. App. at 543, 358 S.E.2d at 541). Because the parties dispute both the doctrine's scope and its application to the facts of this case, this court

- 46 -

first determines how North Carolina courts define and limit the use of promissory estoppel.

The North Carolina Supreme Court recognized the doctrine of promissory estoppel in Clement v. Clement, 230 N.C. 636, 55 S.E.2d 459 (1949). Promissory estoppel was introduced during the court's discussion of a waiver, where it considered whether a promise "might be effectual without the support of consideration." Id. at 639, 55 S.E.2d at 461. After first explaining that "[n]o rule of universal application can be devised to determine whether a waiver does or does not need a consideration to support it," the court cited Judge Learned Hand's observation that promissory estoppel "is now a recognized species of consideration." Id. at 640, 55 S.E.2d at 461 (quoting Porter v. Comm'r of Internal Revenue, 60 F.2d 673, 675 (2d Cir. 1932), aff'd, 288 U.S. 436 (1933)).

Though the Clement court introduced the doctrine, it found promissory estoppel inapplicable to the facts of the case: "For a waiver of a legal right . . . cannot operate as an estoppel, [and] requires a consideration as much as an agreement by any other name." Id. (citations omitted); see also Home Elec., 86 N.C. App. at 543, 358 S.E.2d at 541 ("The [Clement] Court stated that promissory estoppel would apply to the waiver situation, but refused to apply the doctrine on these facts."). Beyond

- 47 -

explaining that "to make it effectual" the promisee "in reliance upon the promise has been placed in a changed condition or position where detriment could only be avoided by enforcement of the promise," and that the promise "must have induced definite and substantial action on the part of the promisee which can only thus be equitably avoided," id. (citing Restatement (First) of Contracts § 90 (A.L.I. 1932)), the Court neither used nor qualified the doctrine's use for future cases.

In Wachovia Bank & Trust Co. v. Rubish, 306 N.C. 417, 293 S.E.2d 749, the North Carolina Supreme Court cited Clement for the definition of a waiver and whether consideration is a necessary element. See Wachovia Bank, 306 N.C. at 425, 293 S.E.2d at 754-55 (quoting Clement, 230 N.C. at 639-40, 55 S.E.2d at 461). While the court in Wachovia Bank similarly found that the parties' actions did not support a waiver or estoppel, id. at 429, 293 S.E.2d at 757, it recognized that the evidence could support "the theory of promissory, as opposed to equitable, estoppel." Id. at 429, 293 S.E.2d at 757. Because a deceased lessor "had waived two breaches of the condition of written notice, and defendant had relied on the promise implied from these waivers that no written notice would be required thereafter," the court maintained that the deceased lessor would have been "estopped from asserting the requirement of written

- 48 -

notice" and the new lessor "stands in the shoes" of the deceased lessor. Id. Like Clement, Wachovia Bank did not qualify or limit the doctrine's use. Instead, it recognized that if a jury could find that the lessor "accepted only oral notice as sufficient to extend the lease," then "he would be estopped by his prior conduct and by defendant's reliance on it to demand written notice" because the lessor "would have 'lulled' defendant into believing written notice was not necessary." Id. at 430, 293 S.E.2d at 757 (quoting Kearney v. Hare, 265 N.C. 570, 575, 144 S.E.2d 636, 640 (1965)).

Here, Defendant's reliance on Wachovia Bank is misplaced, if not misleading. Defendant is correct that "a tenant relied on his landlord's oral promise that he need not give written notice to renew his lease," and the North Carolina Supreme Court "indicated that the statute of frauds poses no barrier to . . . relief" when a promise induces detrimental reliance by the promisee. (Def.'s Resp. (Doc. 23) at 13 (citing Wachovia Bank, 306 N.C. at 433, 293 S.E.2d at 759).) That said, Defendant's argument that the "North Carolina Supreme Court held that contractual consideration may be supplied by estoppel" and that the court "held that the promise was enforceable because 'it induced detrimental reliance by [the tenant]'" are unsupported

by the opinion. (Def.'s Resp. (Doc. 23) at 12-13 (quoting Wachovia Bank, 306 N.C. at 433, 293 S.E.2d at 759).)

The Wachovia Bank court considered two issues: first, whether the evidence at trial supported waiver or estoppel, Wachovia Bank, 306 N.C. at 424, 293 S.E.2d at 754, and second, whether the trial court erred in denying certain witness testimony, id. at 431, 293 S.E.2d at 758. As stated above, on the first issue the court determined that a "finding of waiver or estoppel" could not be supported, while a "theory of promissory, as opposed to equitable, estoppel" could be supported. Id. at 306 N.C. at 429, 293 S.E.2d at 757. The court made this determination after articulating the differences between a waiver, estoppel by waiver as a form of equitable estoppel, and promissory estoppel. For a waiver, the Court maintained that consideration is required for "an agreement to

- 50 -

waive a substantial right or privilege,"[10] id. at 426, 293 S.E.2d at 755 (emphasis in original), but not required for a "formal, as opposed to a substantial, right or privilege." Id. For estoppel by waiver, the court recognized that a party does not need to "prove consideration to support the waiver. Rather, he need only prove an express or implied promise . . . to waive the notice provision and . . . detrimental reliance on that promise." Id. at 427, 293 S.E.2d at 756. For promissory estoppel, the court did not explicitly state whether consideration was necessary, but in the previous paragraph the court recognized that "there is no evidence of new consideration to support a change in the lease's notice requirement." Id. at 427, 293 S.E.2d at 759. From this statement, one might infer

---

[10] Defendant's statement that the court "held that contractual consideration may be supplied by estoppel" contains a parenthetical cite to Wheeler v. Wheeler. (See Def.'s Resp. (Doc. 23) at 12 (citing Wachovia Bank, 306 N.C. at 433, 293 S.E.2d at 759 (citing Wheeler v. Wheeler, 299 N.C. 633, 636, 263 S.E.2d 763, 765 (1980))).) Wheeler does not appear on the page Defendant cites in Wachovia Bank, but it does appear after the above quote. To the extent Defendant intended to cite this quote to support that the Court held that consideration may be supplied by estoppel, this quote discusses the doctrine of waiver and the circumstances that require consideration. Certain occasions, including agreements to waive "a substantial right or privilege," Wachovia Bank, 306 N.C. at 426, 293 S.E.2d at 755, require either consideration or estoppel. This recognition that consideration or estoppel are necessary to support a modification to an agreement does not support the claim that estoppel supplies consideration.

- 51 -

that the court did not find consideration necessary for promissory estoppel.

Even with this inference, none of the doctrines identified by the court support Defendant's characterization that the Wachovia court "held that contractual consideration may be supplied by estoppel." (Def.'s Resp. (Doc. 23) at 12 (emphasis added).) The theory of promissory estoppel articulated by the court "rests on the proposition that [the decedent] had waived two breaches of the condition of written notice, and defendant had relied on the promise implied from these waivers that no written notice would be thereafter required." Wachovia Bank, 306 N.C. at 429, 293 S.E.2d at 757. A waiver may exist "where there is no consideration." Id. at 427, 293 S.E.2d at 756 (quoting 3A Arthur C. Corbin, Contracts § 752 n.4 (1960)). But a waiver without consideration "is not a true estoppel, for there is no misrepresentation of an existing fact." Id. at 428, 293 S.E.2d at 756 (quoting 3A Arthur C. Corbin, Contracts § 752 n.4 (1960)). This type of waiver, where there is no consideration, "may be called 'a promissory estoppel.'" Id. (citation omitted in original) ((quoting 3A Arthur C. Corbin, Contracts § 752 n.4 (1960)).

Thus, the Wachovia Bank court first identified that "the actions of Wachovia are not enough to support a finding of

- 52 -

waiver or estoppel" because "there is no evidence of new consideration to support a change in the lease's notice requirement." Id. at 429, 293 S.E.2d at 757. Then, turning to promissory estoppel, the court recognized that a waiver without consideration may support a theory of promissory estoppel. Id. In doing so, the court did not hold that consideration is supplied by estoppel. Instead, a waiver without consideration may support promissory estoppel.

The court in Wachovia Bank also neither held that a promise was enforceable nor that a promise was enforceable because of detrimental reliance, contrary to Defendant's contentions, (see Def.'s Resp. (Doc. 23) at 13 (quoting Wachovia Bank, 306 N.C. at 433, 293 S.E.2d at 759)). Addressing the second issue, the court held that the trial court erred in excluding evidence on the grounds of the North Carolina Dead Man's Act and the Statute of Frauds. See Wachovia Bank, 306 N.C. at 431, 293 S.E.2d at 758. Analyzing the Statute of Frauds, the court found that the Statute of Frauds did not render the testimony inadmissible because even though the witness statements "do not show a modification of the existing lease based on an exchange of new consideration," the court recognized that the statements could show that the lessor "impliedly promised to forego the notice requirement altogether." Id. at 433, 293 S.E.2d at 759. Under

- 53 -

such circumstances, the court maintained that the promise could be enforceable "only if it induced detrimental reliance by defendant." Id. (citing Restatement (Second) of Contracts § 90 (A.L.I. 1981)).[11]

Contrary to Defendant's contention that the court "held that the promise was enforceable because 'it induced detrimental reliance by [the tenant].'" (Def.'s Resp. (Doc. 23) at 13 (quoting Wachovia Bank, 306 N.C. at 433, 293 S.E.2d at 759)), the court neither held that the promise was enforceable, nor that the promise induced detrimental reliance. The court stated that "[s]uch a promise is enforceable only if it induced detrimental reliance by the defendant." Wachovia Bank, 306 N.C. at 433, 293 S.E.2d at 759 (emphasis added). The court made no finding on detrimental reliance and remanded the case for a new trial. Id. at 434, 293 S.E.2d at 760.

Moreover, Defendant's quotation was part of the court's explanation that the witness testimony did not "show a modification of the existing lease." See id. ("At most they show[ed] [lessor] impliedly promised to forego the notice requirement altogether." (emphasis added).) While the witness statements could support a theory of promissory estoppel, the

---

[11] This section of the Restatement "is often referred to in terms of 'promissory estoppel.'" Restatement (Second) of Contracts § 90 cmt. a (A.L.I. 1981).

court's instructions on remand were limited to the understanding that the Statute of Frauds did not render the testimony inadmissible. Id. at 433-34, 293 S.E.2d at 759-60. Thus, Defendant's assertion that the Wachovia Bank court found the contract enforceable because of detrimental reliance overlooks both the subject matter, where the court considered the applicability of the Statute of Frauds, and the application, where the court recognized that a theory of promissory estoppel could be supported. Wachovia Bank identified the doctrine of promissory estoppel, found that it is excepted from the Statute of Frauds, and supports the notion that consideration is not required. Wachovia Bank does not hold that estoppel supplies consideration, or that a promise was enforceable because of detrimental reliance.

Promissory estoppel was considered by the North Carolina Court of Appeals in Lee v. Paragon Group Contractors, 78 N.C. App. 334, 337 S.E.2d 132 (1985). The North Carolina Court of Appeals limited the doctrine by declining to recognize an "expanded version" of promissory estoppel that "permitt[ed] recovery by a third party." Id. at 78 N.C. App. at 340, 337 S.E.2d at 136. In its third-party analysis, the court cited Clement to support the proposition that "under the current state of the law only the promisee may assert promissory estoppel as a

- 55 -

substitute for consideration." Id. (citing Clement, 230 N.C. at 640, 55 S.E.2d at 461).

Clement and its progeny were then analyzed in Home Electric Company of Lenoir, 86 N.C. App. at 540, 358 S.E.2d at 539. There, the defendant promised to perform subcontracting work at a certain price, but the plaintiff did not promise "that it would use its services if its own bid for the work was accepted." Id. at 540-41, 358 S.E.2d at 539. The court considered whether promissory estoppel should apply "so as to serve as a substitute for consideration." Id. at 541, 358 S.E.2d at 540. Reviewing the above cases, the court identified that "our Courts have never recognized [promissory estoppel] as a substitute for consideration, either in construction bidding, or in any other context." Id. at 543, 358 S.E.2d at 541. Additionally, "[t]he North Carolina cases which have applied the doctrine have only done so in a defensive situation, where there has been an intended abandonment of an existing right by the promisee. North Carolina case law has not approved the doctrine for affirmative relief." Id.

On the basis of Clement, the Home Electric court recognized that the "defendant asserted the doctrine to prevent plaintiff from charging interest when plaintiff had previously agreed not to charge it." Id. On the basis of Wachovia Bank, the Home

- 56 -

Electric court identified that the doctrine could be used "as a defense to the summary ejectment action by proving an express or implied promise to waive the written notice provision and by proving his detrimental reliance on that promise." Id. at 544, 358 S.E.2d at 541. Additionally, the court explained that the Wachovia Bank court made "no assertion that this Court can apply the doctrine in an affirmative manner, particularly under the facts of this case." Id. at 544, 358 S.E.2d at 542. Therefore, in both cases, the court in Home Electric recognized that "the parties were merely attempting to modify a valid contract which was already in existence." Id. at 545, 358 S.E.2d at 542.

This court's review of promissory estoppel compels this court to conclude that North Carolina courts have not held that estoppel can supply otherwise illusory consideration. Courts have recognized promissory estoppel as a doctrine, see Clement, 230 N.C. at 640, 55 S.E.2d at 461, identified when consideration is not required for a waiver, see Wachovia Bank, 306 N.C. at 426, 293 S.E.2d at 755, and maintained that consideration is not necessary for estoppel, see id. at 427, 293 S.E.2d at 756. These equitable principles, however, do not support the conclusion that estoppel can support an otherwise unenforceable contract that fails for lack of consideration.

- 57 -

In applying estoppel, it appears to this court that if a valid contract exists at the time of formation, and one party's post-formation actions either expressly or impliedly waive certain requirements or lead the other party into believing certain requirements no longer exist, then the "lulled" party can assert promissory estoppel to enforce the additional terms accepted during the contractual relationship. See Kearney, 265 N.C. 570, 575, 144 S.E.2d 636, 640. In that respect, the "lulled" party is defending or preserving its course of conduct. But if the contract is unenforceable at inception, neither party can bind the other party, in an affirmative or offensive manner, in equity. See Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713-14, 124 S.E.2d 905, 908 (1962) (recognizing that "[t]here cannot be an express and an implied contract for the same thing existing at the same time" because "[n]o agreement can be implied where there is an express one existing," and that "where the parties have made a contract for themselves, covering the whole subject matter, no promise is implied by law" (quoting 12 Am. Jur. Contracts § 7)).

Here, this court agrees with Plaintiff that Defendant's asserted use of promissory estoppel is not recognized under North Carolina law. Instead of seeking "to enforce a waiver or modification of its contractual obligations where such waiver or

- 58 -

modifications were made or agreed to by its promisee," Defendant "is seeking to deploy the doctrine of promissory estoppel to affirmatively enforce obligations on Plaintiff that lacked consideration from the inception." (Pl.'s Reply (Doc. 24) at 6-7 (emphasis omitted).) This court disagrees with Defendant's "passing dictum" characterization of Home Electric's observation that estoppel has not been recognized as a substitute for consideration. (See Def.'s Resp. (Doc. 23) at 12.) Based on an analysis of promissory estoppel cases in North Carolina, this court finds that Home Electric's conclusion was both established by a review of North Carolina precedent and ultimately supported the holding that promissory estoppel could not be asserted. This conclusion has been accepted by another court in this district, see Dealers Supply Co. v. Cheil Indus., Inc., 348 F. Supp. 2d 579, 587 (M.D.N.C. 2004), and recently reiterated by the North Carolina Court of Appeals, see Fifth Avenue, 297 N.C. App. at 267-68, 911 S.E.2d at 123.

The undisputed facts do not reveal any post-formation actions by Plaintiff that indicate a change in the contractual relationship such that equity would require this court to hold Plaintiff to those modifications. Because the Agreement lacked consideration at formation, Defendant's asserted use of promissory estoppel seeks to affirmatively bind Plaintiff to

- 59 -

unenforceable terms. This theory of promissory estoppel has not been recognized by North Carolina courts, and this court declines to expand the doctrine's limited scope to this case.

### ii.  **Quasi-Estoppel**

Defendant asserts that Plaintiff's "attempt to deny the existence of consideration is similarly undermined by North Carolina's doctrine of quasi-estoppel, also known as estoppel by benefit." (Def.'s Resp. (Doc. 23) at 13; see Answer (Doc. 19) ¶ 14.) Defendant explains that quasi-estoppel "does not require a showing of detrimental reliance." (Id.) Instead, the doctrine "is directly grounded" in a party's "acquiescence or acceptance of payment or benefits." (Id. (quoting Cleveland Const., Inc. v. Ellis-Don Const. Inc., 210 N.C. App. 522, 530, 709 S.E.2d 512, 520 (2011)).) Because Plaintiff "has accepted the benefit of rent payments," Defendant argues that Plaintiff "should not be permitted" to deny "its promise that [Defendant] may build and operate a cell tower on the property." (Id. at 14.) In response, Plaintiff argues that Defendant's estoppel arguments, including quasi-estoppel, fail as a matter of law because "Plaintiff has not accepted benefits under the [Agreement]." (Pl.'s Reply (Doc. 24) at 5.)

North Carolina courts have recognized the doctrine of quasi-estoppel, where a party that "accepts a transaction or

- 60 -

instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 18, 591 S.E.2d 870, 882 (2004). Under this "inherently flexible" doctrine, id., "one is not permitted to injure another by taking a position inconsistent with prior conduct, regardless of whether the person had actually relied upon that conduct." Mayer v. Mayer, 66 N.C. App. 522, 532, 311 S.E.2d 659, 666 (1984). While detrimental reliance is not required for a theory of quasi-estoppel, see Whiteacre, 358 N.C. at 19, 591 S.E.2d at 882, courts have maintained that quasi-estoppel "has its basis in acceptance of benefits." Carolina Medicorp, Inc. v. Bd. of Trs., 118 N.C. App. 485, 492, 456 S.E.2d 116, 120 (1995) (quoting Redevelopment Com'n of Greenville v. Hannaford, 29 N.C. App. 1, 4, 222 S.E.2d 752, 754 (1976)). Therefore, quasi-estoppel prevents "a party from benefitting by taking two clearly inconsistent positions." B & F Slosman, 148 N.C. App. At 88, 557 S.E.2d at 181.

Here, the undisputed facts do not support a theory of quasi-estoppel. To the extent that Plaintiff's termination letter after granting Defendant access to the land for over three years could be considered inconsistent, this court finds that Plaintiff received no benefit during the existence of the

- 61 -

contractual relationship. Quasi-estoppel "is directly grounded . . . upon a party's acquiescence or acceptance of payments or benefits, by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts." Godley v. Pitt Cnty., 306 N.C. 357, 361, 293 S.E.2d 167, 170 (1982). Plaintiff neither acquiesced to, nor received, rent payments or any other benefit during the time it permitted Defendant an exclusive right to its land. Thus, Plaintiff did not receive any benefits prior to any change in position. Because quasi-estoppel prohibits a party from receiving benefit and "thereafter" taking an inconsistent position, id., this court finds the doctrine does not apply in this case.

Even if Plaintiff had received and not returned the rent payments after its termination letter, this court finds that Defendant cannot support a theory of quasi-estoppel. In North Carolina cases where the doctrine has been used, the non-moving party has received benefits for a protracted period of time. See Brooks, 329 N.C. at 173, 404 S.E.2d at 859 (recognizing that the estopped party made required payments for nearly eight years and paid property taxes); Z.A. Sneeden's Sons, Inc. v. ZP No. 116, L.L.C., 190 N.C. App. 90, 96–97, 660 S.E.2d 204, 209 (2008) (identifying payments and use of an easement for over five

- 62 -

years). Alternatively, courts have rejected the doctrine when the "primary benefit" was "only in effect for approximately one year" and then superseded by a new agreement. Kyle v. Felfel, 254 N.C. App. 684, 693, 803 S.E.2d 249, 255-56 (2017). While this court recognizes that quasi-estoppel "cannot be reduced to any rigid formulation," Whiteacre, 358 N.C. at 18, 591 S.E.2d at 882, it also finds that the doctrine "serves to moderate the unjust results that would follow from the unbending application of common law rules and statutes." Brooks, 329 N.C. at 173, 404 S.E.2d at 859. Any payments made by Defendant after the parties' termination correspondence, as an effort to create a benefit that had been nonexistent for over three years, does not necessitate the use of an equitable doctrine that protects against unjust results. Therefore, quasi-estoppel is inapplicable.

### iii. Ratification

Defendant contends that "another kind of estoppel" applies to this case. (Def.'s Resp. (Doc. 23) at 14.) Because Plaintiff "has ratified the Lease," Defendant argues that Plaintiff "may not contend that consideration does not exist." (Id.) In support, Defendant explains that Plaintiff "has been fully aware of all the relevant circumstances." (Id. at 14.) Defendant argues Plaintiff "has approved revised designs for the cell

- 63 -

tower. It did not object as [Defendant] prepared the property for construction, and it did not object as [Defendant] began building the tower and installing equipment." (Id.) Conversely, Plaintiff asserts that "any alleged conduct proffered as ratifying the [Agreement], . . . necessarily fail[s] to support a lease of real property exceeding three years of duration pursuant to North Carolina's statute of frauds." (Pl.'s Reply (Doc. 24) at 6) (citing N.C. Gen. Stat. § 22-2 (2023).)

North Carolina courts have applied the doctrine of ratification to various contexts. First, as a matter of agency law, "a principal may be held liable for the actions of an individual who lacks authority to act as an agent, but nonetheless 'makes a contract as an agent for [the principal]' when the principal, 'upon discovery of the facts, . . . ratif[ies] the contract . . . .'" James B. Taylor Fam. Ltd. P'ship v. Bank of Granite, 234 N.C. App. 478, 762 S.E.2d 531, 2014 WL 2777492, at *7 (2014) (unpublished table opinion) (alterations in original) (quoting Patterson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 266 N.C. 489, 492, 146 S.E.2d 390, 393 (1966)). When the principal either expressly or impliedly affirms the acts of another, see Bell Atl. Tricon Leasing Corp. v. DRR, Inc., 114 N.C. App. 771, 776, 443 S.E.2d 374, 377 (1994), that agent's actions are "given effect as if originally

- 64 -

authorized by" the principal. <u>King Fa, LLC v. Ming Xen Chen</u>, 248 N.C. App. 221, 226, 788 S.E.2d 646, 650 (2016).

Another theory of ratification is grounded in the authorization or approval of an agreement that was "procured by either fraud, duress or undue influence." <u>Link v. Link</u>, 278 N.C. 181, 197, 179 S.E.2d 697, 706 (1971). The North Carolina Supreme Court found it "elementary" that such transactions "may be ratified by the victim so as to preclude a subsequent suit to set the transaction aside." <u>Id.</u> However, the party under such conditions cannot later ratify an agreement "as long as his condition remained unchanged." <u>Ridings v. Ridings</u>, 55 N.C. App. 630, 634, 286 S.E.2d 614, 617 (1982). Therefore, "[t]he act only constitutes ratification if it is done with full knowledge that the acceptance of benefits or the performance arises pursuant to the agreement and is done so without any duress." <u>In re Godfrey</u>, 298 N.C. App. 29, 32, 914 S.E.2d 14, 16 (2025) (quoting <u>Goodwin v. Webb</u>, 152 N.C. App. 650, 657, 568 S.E.2d 311, 315 (2002), (Greene, J., dissenting), <u>rev'd</u>, 357 N.C. 40, 577 S.E.2d 621 (2003) (adopting dissent's opinion)).

This court finds neither use of ratification applicable. The first case cited by Defendant in its response, <u>Smith v. SunTrust Bank</u>, initially recognized that "[u]nder North Carolina law, ratification typically arises in the domestic context where

- 65 -

one party to an otherwise voidable obligation contained in a divorce-related agreement accepts its benefits and performs pursuant to its terms." 554 B.R. 344, 350 (M.D.N.C. 2016). The court then explained that, in the case before it, "the question is slightly different: whether [Plaintiff] ratified the [Loan] as a matter of law through the Settlement Agreement and through her subsequent conduct." Id. Though the plaintiff knew that someone else "had forged her signature" on the initial loan, id., the court identified that in settling the balance of the loan she "agreed to pay the [Loan] and acknowledged that it (and her obligation to pay) would be secured by a valid lien on the house." Id. Because the plaintiff "benefitted from the loan as part of the Settlement Agreement" and "repeatedly made monthly payments on the [Loan] for over three years," the court determined that the plaintiff ratified the loan originally procured by a foraged signature. Id.

Unlike the facts of SunTrust, this court finds that Defendant has not alleged fraud, duress, or undue influence as is necessary to support ratification under the second theory described above. Based on the negotiation process, the terms of the Agreement, and Defendant's letter following the Agreement stating that it "has elected to immediately proceed with construction," (see Def.'s 14 Dec. 2020 Letter (Doc. 13) at 28),

- 66 -

this court finds that Defendant maintained a degree of control throughout the Agreement and post-Agreement process that provided Plaintiff the belief that payments would soon begin. Therefore, this court finds that Defendant could not, as a matter of law, have signed the Agreement under conditions that give rise to the theory of ratification described in SunTrust.

Defendant's second case implicates the first theory of ratification described above. There, the plaintiff was the administratrix of an estate, which entered into "a Naked Trust Agreement" with the defendant, who then executed an "Inter-Creditor Agreement" on behalf of the estate. Livingston v. Adams Kleemeier Hagan Hannah & Fouts, P.L.L.C., 163 N.C. App. 397, 399–402, 594 S.E.2d 44, 46–48 (2004). The Inter-Creditor Agreement contained a release and the plaintiff argued "that the undisputed facts show that plaintiff neither released defendants from such a claim, nor ratified the release of defendants." Id. at 404, 594 S.E.2d at 49. Explaining that "[a] release, originally invalid or voidable, for any reason may be ratified and affirmed by the subsequent acts of the persons interested," id. (quoting Presnell v. Liner, 218 N.C. 152, 154, 10 S.E.2d 639, 640 (1940)), the court determined that the plaintiff ratified the lease. The plaintiff "never attempted to repudiate the Inter-Creditor Agreement" and testified that she supported

- 67 -

the defendant's execution of the agreement. Id. Because "the benefits of the release were readily accepted" by the estate, the court found that the plaintiff's actions supported a theory of ratification. Id. at 404-05, 594 S.E.2d at 49.

In this case, Defendant is unable to establish the first theory of ratification. The facts do not suggest that an agent signed the Agreement on behalf of a principal, that the principal knew all material facts, or that the principal failed to repudiate the agent's actions. Defendant has provided no indication that an agency relationship exists or that the individuals signing the Agreement for Plaintiff lacked authority to sign. Even if Defendant had asserted an agency relationship, the facts also fail to support a finding that a principal continued to accept any benefits provided to Plaintiff. The only repudiation stated by the parties was that of Plaintiff's letter to Defendant stating that the Agreement was "null and void and of no further force and effect." (Pl.'s 8 Nov. 2023 Letter (Doc. 13) at 30.) By the time of that letter, no benefits had been provided to or accepted by Plaintiff. Defendant cannot support this theory of ratification absent an agency relationship, a principal's knowledge of the facts, and a principal's support or lack of repudiation, none of which have been alleged by

- 68 -

Defendant. Therefore, this court finds that ratification is inapplicable.

### iv.  <u>Declaratory Judgment</u>

"In adjudicating claims for declaratory relief, federal courts apply the federal Declaratory Judgment Act, 28 U.S.C. § 2201, rather than state analogues such as North Carolina General Statute § 1-253." <u>Williams v. Williams</u>, No. 1:20CV904, 2022 WL 1720147, at *4 (M.D.N.C. May 27, 2022), <u>aff'd</u>, No. 22-1679, 2022 WL 17249694 (4th Cir. Nov. 28, 2022). The Fourth Circuit has articulated "three essentials" for exercising jurisdiction in a declaratory judgment proceeding:

> (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

<u>Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.</u>, 386 F.3d 581, 592 (4th Cir. 2004).

The first prong parallels the actual controversy requirement under Article III of the United States Constitution. <u>Id.</u> In a state-law contract dispute, the Fourth Circuit determined that the first prong was satisfied when the district court maintained diversity jurisdiction over the parties and the "plaintiff seeks declaratory relief in order to avoid the

- 69 -

accrual of potential damages for past actions." Id. Here, the parties agree that this court has jurisdiction on the basis of diversity. (See Def.'s Notice of Removal (Doc. 1) at 2–4; Pl.'s Br. (Doc. 22) at 8.) As a contract dispute where Plaintiff seeks a declaratory judgment "with respect to the issue of whether the [Agreement] fails for lack of consideration," (Pl.'s Br. (Doc. 22) at 8), this court finds that the first prong is satisfied. Plaintiff's conduct runs the risk of incurring liability if Plaintiff's rights under the Agreement are not clarified. The Agreement itself contains provisions on the non-defaulting party's rights to "pursue any remedy now or hereafter available to the non-defaulting Party under the Laws or judicial decisions of the state in which the Property is located." (Agreement (Doc. 13) at 17.) Moreover, Defendant responded to Plaintiff's termination letter by concluding that "Verizon expressly reserves all rights, remedies and defenses, in law or equity, related to this matter." (Def.'s 22 Nov. 2023 Letter (Doc. 13) at 34.) Unlike cases that have found a declaratory judgment improper under the first prong when even if the agreement was "unduly vague," then the party would still owe "the rents due under the lease," Williams, 2022 WL 1720147, at *6, this court finds that a declaratory judgment on the issue of consideration would define the parties' obligations under the Agreement and

- 70 -

determine whether both rent payments and property rights are required. Therefore, the first prong is satisfied.

With the second prong of diversity jurisdiction already addressed, this court turns to the third prong. The Fourth Circuit has explained that "[i]f a district court possesses declaratory judgment jurisdiction, it may nonetheless, in the exercise of its discretion, decline to entertain the action." Volvo Const. Equip., 386 F.3d at 594. This court must have "good reason" to "decline to entertain a declaratory judgment action." Cont'l Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937)). Like the district court in Volvo Construction Equipment, this court's declaratory judgment "serve[s] several useful purposes," including that "it clarifie[s] and settle[s] [Plaintiff's] legal obligations under the [Agreement], it eliminate[s] uncertainty regarding those agreements, and it clarifie[s] the contractual rights of the parties." Volvo Const. Equip., 386 F.3d at 594. Because a declaratory judgment will "settl[e] the legal relations in issue," Quarles, 92 F.2d at 325, the third prong is satisfied. Therefore, this court finds that Plaintiff is entitled to a declaratory judgment on the pleadings.

## V.    CONCLUSION

This court finds, for purposes of Plaintiff's motion, (Doc. 21), that the Land Lease Agreement was not supported by consideration and is therefore unenforceable against Plaintiff. However, it is not clear to this court whether all claims and matters are resolved by this finding.

Federal Rule of Civil Procedure 8(b)(1)(A) requires that a party "state in short and plain terms its defense to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). The Rules further provide the following: "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleadings as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2). It is not clear to this court whether this court should find that certain facts, alleged as defenses, are more properly construed as counterclaims seeking affirmative relief of some type. Defendant has asserted a number of defenses, some of which are near frivolous, (see, e.g., Answer (Doc. 19) at 5 ("Plaintiff's Amended Complaint is an impermissible shot-gun [sic] pleading.")), and others which might have merit as counterclaims.

This court therefore concludes that Plaintiff's Motion for Judgment on the Pleadings, (Doc. 21), should be granted in part

- 72 -

and a finding entered that the Land Lease Agreement was not supported by consideration and is therefore unenforceable against Plaintiff. All other relief will be denied without prejudice to further consideration. This court will further grant Defendant a period of thirty (30) days to amend the Answer to more clearly allege any applicable counterclaims. In the event Defendant declines to amend the Answer, the parties shall file with the court a joint stipulation acknowledging that all matters have been resolved by this court's finding and a final judgment entered.

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Judgment on the Pleadings, (Doc. 21), is **GRANTED IN PART**, and the court **DECLARES** that the Land Lease Agreement was not and is not supported by consideration and is therefore unenforceable by Defendant against Plaintiff. All other relief is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant may file, within thirty (30) days of the date of this Memorandum Opinion and Order, an amended answer which clearly alleges any applicable counterclaims. In the event Defendant declines to file an amended answer asserting counterclaims, the parties shall file a joint stipulation acknowledging that all matters have been resolved by this court's finding and a final judgment will be entered.

- 73 -

This the 30th day of March, 2026.

_____
United States District Judge

- 74 -

Case 1:23-cv-01125-WO-JGM   Document 26   Filed 03/30/26   Page 74 of 74